## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| HENRY BARROWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-cv-1483 |
| ) | |
| PAUL BLACKWELL, CHRIS FORBES, ) | |
| KYLE DEVINE, DERRICK CAUDLE, ) | |
| JERRY DRONENBERG, and TROY ) | |
| SMITH, ) | |
| ) | |
| Defendants. ) | |

## O R D E R & OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 21) and Defendants' Motion to Substitute Greg Tangman for Named Defendant Troy Smith. (Doc. 20). For the reasons discussed below, Defendants' Motion for Summary Judgment (Doc. 21) is DENIED. The Court takes Defendants' Motion to Substitute under advisement, and will rule on it during a Status Conference scheduled for April 6, 2016 at 1:15 p.m.

### PROCEDURAL BACKGROUND

On October 15, 2013, Henry Barrows ("Plaintiff"), proceeding *pro se*, filed a Complaint against twelve defendants who he alleges violated his constitutional rights at Pontiac Correctional Center ("Pontiac"). (Doc. 1). Plaintiff alleges that a tactical team violated his Eighth Amendment rights in June of 2013 when they sprayed him with pepper spray during a cell extraction and sexually assaulted him during a cavity search. (Doc. 4 at 1). He also alleged claims against a corrections

officer who did not allow him to wash the mace off of his skin following the cell extraction, a doctor who failed to report the tactical team, and the warden, who did not respond to his emergency grievance. (*Id.*). Finally, he alleged that a doctor and counselor violated his Eighth Amendment and Due Process rights in September of 2013 when they failed to do anything about the conditions of his cell while he was on suicide watch. (*Id.* at 2).

The Court screened Plaintiff's Complaint pursuant to 29 U.S.C. § 1915A on July 31, 2014. (Doc. 4). It allowed Plaintiff's claims against the John Doe members of the tactical team to proceed, but dismissed all other claims. (*Id.* at 2-3). At screening, the Court named Pontiac's warden, Randy Pfister, so that he could aid in identifying the John Doe defendants. (*Id.* at 3). On October 21, 2014, Pfister filed a notice with the Court and named the John Doe Defendants as: Sgt. Paul Blackwell, Sgt. Chris Forbes, Correctional Officer Kyle Devine, Correctional Officer Derrick Caudle, Correctional Officer Jerry Dronenberg, and Correctional Officer Troy Smith. (Doc. 11 at 2). The Court subsequently dismissed Pfister as a defendant, dismissed the John Doe Defendants, and added as defendants the six individuals identified by Pfister. (Dkt. at Text Order of Oct. 22, 2014).

On July 15, 2015, Defendants filed a motion to substitute Greg Tangman for Defendant Troy Smith. (Doc. 20). In that motion, Defendants stated that Troy Smith had been identified in error and was not a member of the tactical team that performed the cell extraction at issue. (*Id.* at 1). Greg Tangman, however, was a member of the tactical team. (*Id.*). Plaintiff has not yet responded to the motion. Shortly thereafter, Defendants filed their Motion for Summary Judgment. (Doc. 21).

2

## FACTUAL BACKGROUND

On June 7, 2013, Plaintiff's lunch was not brought to his cell at Pontiac. He protested by putting his hand into the food slot of his cell, and he kept his hand there in spite of a number of orders from a correctional officer that he remove it. In light of Plaintiff's non-compliance with these orders, the Orange Crush Tactical Team at Pontiac was summoned to remove him from his cell.

The tactical team tasked with removing Plaintiff from his cell was led by Defendant Blackwell, and included five other members: Defendants Caudle, Dronenberg, Forbes, and Devine, and Correctional Officer Greg Tangman. Devine filmed the entire operation from start to finish.

After the tactical team arrived at Plaintiff's cell, Defendant Blackwell sprayed Plaintiff with a brief burst of chemical spray,[1] and members of the tactical team then entered Plaintiff's cell, placed him in leg shackles, and removed him from his cell. The parties dispute what ultimately led to Blackwell spraying Plaintiff with chemical spray. Defendants state that Plaintiff refused three direct orders to cuff up before Blackwell utilized the spray. Plaintiff, however, insists that he complied with Defendants' order to place his hands above his head, and also says that Defendants did not allow him to cuff up.

A review of the video taken by Defendant Devine is inconclusive. The video confirms that Plaintiff was given three direct orders to cuff up, but it is not clear

---

[1] Although Defendants' statement of undisputed facts does not identify Blackwell as the member of the tactical team that sprayed the mace and Plaintiff has not independently identified Blackwell, Blackwell attests that he was the team-leader of the tactical team and that he "administered a one-second burst of pepper spray into his cell." (Blackwell Decl., Doc. 22-1 at 14, ¶¶ 6, 9).

3

from the video whether Plaintiff refused the third order. The tactical team arrives at Plaintiff's cell twenty-three seconds into the video. At twenty-nine seconds into the video, a member of the tactical team gives Plaintiff his first direct order to cuff up. At thirty-four seconds into the video, a member of the tactical team gives Plaintiff his second direct order to cuff up. From thirty-eight seconds to forty-one seconds into the video, Plaintiff is visible, and has placed his hands over his head. A member of the tactical team gives Plaintiff his "third and final direct order" to cuff up from thirty-nine seconds to forty-three seconds into video. During this window of time, it appears that Plaintiff removes his hands from his head and then begins to turn around in a way that could suggest he is complying with Defendants' order. At that point, four members of the tactical team surround the cell door and block any view of Plaintiff. The sound of pepper spray being administered can be heard between forty-eight and forty-nine seconds into the video.

After Defendants extracted Plaintiff from his cell, they briefly took him outside. Once outside, Plaintiff told Defendants that he needed a medical technician to flush out his eyes, and a medical technician came and did that.

Defendants then took Plaintiff to cell 152, which is inside of another gallery, where they searched him. This included a search of Plaintiff's rectal cavity, during which he was on his knees, had his head on the floor, and was asked to spread his buttocks apart. Plaintiff claims that he was assaulted following the rectal cavity search. He testified that somebody put an object into his rectum between ten and fifteen times. He also said that one of the defendants asked him how he liked "being fucked in the ass" since he was "acting an ass." (Pl. Dep. 32, Doc. 22-1 at 8). In a

declaration submitted along with his response to the motion for summary judgment, without identifying any specific members of the tactical team, Plaintiff simply says that the tactical team sexually assaulted him "by placing an object inside [his] rectum."

The videotape also captured most of the search at issue. For much of the time, Plaintiff can be seen against the left wall of the cell while three of the defendants conduct the search. However, Plaintiff is not visible during the alleged rectal cavity search. At minute 6:10 of the video, two Defendants move Plaintiff away from the wall, pushing him backwards while he is on his knees. Beginning at minute 6:13 of the video, Plaintiff is out of view of the camera. Between minute 6:13 and 6:22, one of the Defendants appears to examine Plaintiff's face or the front of his body with a flashlight, and then walks behind Plaintiff. During this time, the two Defendants who moved Plaintiff away from the wall appear to be restraining him. At minute 6:25, one of the Defendants can be heard saying, "spread your cheeks!" Ten seconds later, the two Defendants who are restraining Plaintiff help him up and move him back against the cell's left wall, thereby bringing him back into the view of the camera.

After Defendants completed their search of Plaintiff, one of the Defendants brought Plaintiff a garment to wrap around his waist, and the tactical team escorted him down the gallery to cell 107. It took Defendants just under two minutes to move Plaintiff between the cells. Plaintiff says that his buttocks were exposed during this time. Although Plaintiff's eyes were flushed out by a medical technician during his transport, Plaintiff complains that the tactical team did not

5

provide him with a shower to wash off any residual mace before putting him in cell 107.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).

At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). However, when a videotape "blatantly contradict[s]" the non-movants version of facts in such a way that it is "so utterly discredited by the record that no reasonable jury could have believed him," there is

no "genuine" dispute and the Court should view the facts in light of the video. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## DISCUSSION

Defendants argue that they are entitled to summary judgment for two reasons. First, they argue that Plaintiff has failed to identify an individual correctional officer who has violated his constitutional rights. (Doc. 22 at 5). Second, they argue that the video recording of the incident blatantly contradicts Plaintiff's version of facts and shows that the tactical team did not violate his Eighth Amendment rights. Neither of Defendants' arguments compel the Court to grant summary judgment.

### I. Individual Involvement

Defendants first argue that summary judgment must be granted because Plaintiff has failed to identify specific defendants that violated his rights. They rely upon the Seventh Circuit's opinion in *Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005), which explained that a plaintiff must identify particular defendants who violated the Eighth Amendment because determining whether a violation occurred requires "inquir[ing] into [the] prison official's state of mind." *Id.* at 1065-66 (quoting *Wilson v. Seiter*, 501 U.S. 294, 300).

In *Harper*, two state prisoners sued twelve prison guards and two supervisors for battering them during a cell transfer. *Id.* at 1054. At trial, neither of the prisoners "identified any individual guard who was abusive." *Id.* at 1058. Following the prisoners' case in chief, the trial judge dismissed all but five of the named defendants pursuant to Federal Rule of Civil Procedure 50, as the evidence showed

7

that "only five . . . had actually been in physical contact with the plaintiffs." *Id.* at 1059.

The Seventh Circuit affirmed the dismissal of these five defendants, and explained, "[t]he problem [the prisoner] faces, and has faced throughout the factual and legal presentation of the case, is that he has failed to identify any individual guards that violated his constitutional rights with the use of excessive force at any point during the transfer." *Id.* at 1065. "It was [the prisoner's] burden to identify, either through discovery . . . or through evidence submitted at trial, those guards that allegedly violated his constitutional rights during the time frame in question." *Id.* at 1065-66.

The decision included a caveat, however. While acknowledging that courts employ an "essentially identical" method of analysis when reviewing motions made pursuant to Rules 50 and 56, it noted that "the disposition of this case may well have been different if we were reviewing a grant of summary judgment and [the plaintiff] would still have trial to bear out facts supporting his claim." *Id.* at 1066, n. 19.

*Harper* does not apply to Plaintiff's claim that the tactical team used excessive force when it sprayed him with chemical spray. Although Plaintiff did not identify the particular Defendant who used the spray, Defendant Blackwell said in his affidavit that it was him. (Blackwell Decl., Doc. 22-1 at 14, ¶¶ 6, 9). Therefore, there is evidence that a particular Defendant took the actions that Plaintiff challenges.

Plaintiff's claim that he was sexually assaulted during the cavity search is more difficult. In his deposition, Plaintiff said he did not know which of the members of the tactical team sexually assaulted him because he had his head on the ground. (Pl. Dep. 30, Doc. 22-1 at 8). He did describe how he was sexually assaulted, however: he agreed that one of the tactical team members to his left and one of the tactical team members to his right spread his buttocks, and a third and possibly fourth tactical team member assaulted him by placing an object into his rectum. (Pl. Dep. 31, Doc. 22-1 at 8). This recollection is not contradicted by the video recording, which shows two officers (one to Plaintiff's right and one to Plaintiff's left) next to Plaintiff during the search of his rectal cavity, while a third officer is behind him and out of view of the camera.

Plaintiff should have used discovery to obtain the identity of the particular Defendants who were in his cell during the cavity search, but it appears that he did not do so. Despite this, the affidavits that Defendants submitted along with the motion for summary judgment help shed some light on the identity of those officers. Defendants Caudle, Dronenberg, and Forbes all admitted that they were among the officers who conducted the escort and the body search. (*See* Caudle Decl., Doc. 22-1 at 16, ¶ 10; Dronenberg Decl., Doc. 22-1 at 18, ¶ 10; Forbes Decl., Doc. 22-1 at 20, ¶ 20). So did Greg Tangman. (Tangman Decl., Doc. 22-1 at 22, ¶ 10). Blackwell – the team leader – implicitly states that he was not involved in "the escort and the body search," as he declares that he "was able to see and hear . . . the officers who were conducting the escort and the body search." (Blackwell Decl., Doc. 22-1 at 14, ¶ 19).

9

And finally, Defendant Devine did not conduct the search or escort Plaintiff, as he was videotaping the entire proceeding. (*Id.* ¶ 7).

So, despite Plaintiff's lack of discovery, it is reasonable to expect that he could use the video evidence and testimony from Caudle, Dronenberg, Forbes, and Tangman to ascertain which three of those four were in the cell during his search. If a jury believes Plaintiff's testimony that that his rectal cavity was penetrated and the officer who examined his rectal cavity also used an object to penetrate him, it could reasonably conclude that that particular officer was responsible for assaulting him. In light of this, the Court concludes that it would be inappropriate to grant judgment at this time on this basis. *See Harper*, 400 F.3d at 1066, n. 19.

II. **Video Evidence**

Defendants next suggest that the Court should grant summary judgment because the video recording of the cell extraction and the cavity search blatantly contradicts Plaintiff's account and proves that no Eighth Amendment violation has occurred. *See Scott*, 550 U.S. at 380-81. Although a jury that has watched the video could certainly conclude that Plaintiff's rights were not violated, the video is too inconclusive to grant summary judgment.

**A. Use of chemical spray during the cell extraction**

A prisoner's Eighth Amendment rights are violated when a state actor unnecessarily and wantonly inflicts pain upon him. *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). Prison officials are permitted to use more than de minimis force without violating the Eighth Amendment, but such force must be "applied in a good-faith effort to maintain or restore discipline" and cannot be applied "maliciously and

sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Courts consider several factors "in determining whether a defendant applied force in good faith or for the purpose of causing harm, including a need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Id.* at 477.

The use of pepper spray does not *per se* violate the Eighth Amendment. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1994). Indeed, when inmates refuse to obey orders given by prison staff, "some means must be used to compel compliance, such as a chemical agent or physical force." *Id.* at 1267; *see also Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005) ("This court has held that prison guards may use chemical sprays when reasonably necessary to subdue recalcitrant prisoners, for orders must be obeyed, and there are only so many choices available to correctional officers when inmates refuse."). "Constitutional liability attaches only when prison officials use chemical agents 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'" *Kuykendall v. Kennell*, No. 14-1477, 2015 WL 1887507, at *2 (C.D. Ill. Apr. 24, 2015).

Courts have granted summary judgment in favor of defendants when video evidence has shown that pepper spray was used on obviously non-compliant prisoners. *See, e.g., Barrett v. Wallace*, 570 F. App'x 598, 601 (7th Cir. 2014) ("The videorecording of the cell extraction confirms that pepper spray was used only because Barrett – who was in need of prompt medical attention after overdosing – refused to leave his cell."); *Littler v. Shriner,* No. 3:11-CV-217, 2013 WL 4788123, at

11

\*4 (N.D. Ind. Sept. 9, 2013) ("The video clearly shows a very obstinate Littler refusing to comply with orders . . . Shriner's actions were designed to gradually escalate Littler's discomfort in an effort to compel compliance."); *Whitfield v. Walker*, No. 04-3136, 2007 WL 2769658, at \*5 (C.D. Ill. Sept. 19, 2007), *aff'd*, 438 F. App'x 501 (7th Cir. 2011).

Here, however, the Court cannot conclude from the video that chemical spray was used to compel Plaintiff's compliance with the orders to cuff up. It is not clear from the video that Plaintiff refused to comply with the third direct order, and Plaintiff has stated that he was not permitted to cuff up. *See Sobuh v. Heath*, No. 3:12-CV-057 JD, 2014 WL 3660457, at \*7 (N.D. Ind. July 23, 2014) (refusing to credit at summary judgment video in which defendant officers "obstruct[ed] the camera's view of the plaintiff almost entirely."). Supposing that Plaintiff attempted to cuff up following this order, pepper spray would not have been necessary to ensure Plaintiff's compliance. *See Soto*, 744 F.3d at 1267. This factual dispute as to whether the tactical team needed to use the pepper spray to obtain compliance makes summary judgment inappropriate on this claim.

It is worth noting that a number of the other relevant factors point toward the tactical team using force in a "good-faith effort to maintain or restore discipline." *Lewis*, 581 F.3d at 475. Defendant Blackwell only utilized a short, one-second burst of pepper spray, and the tactical team immediately brought Plaintiff to a medical technician who ameliorated the effects of the pepper spray by flushing out his eyes. *See id.* at 477 (identifying "amount of force used" and "efforts made to temper the severity of the force" among relevant factors to consider). The video also

reflects that the tactical team behaved in a calm and professional manner throughout the extraction. *See Whitfield*, 2007 WL 2769658, at *5. Even so, the factual dispute left unresolved by the video makes summary judgment inappropriate.

## B. Sexual Assault During the Cavity Search[2]

Defendants also argue that the video contradicts Plaintiff's claim that he was sexually assaulted. During his deposition, Plaintiff estimated that an object was placed into his rectum between ten and fifteen times, and that the sexual abuse lasted "[n]ot more than ten minutes." (Pl. Dep. 32, Doc. 22-1 at 8). He said that this abuse occurred after the search of his rectal cavity. (*Id.* 30, Doc. 22-1 at 8). The video recording reflects that only ten seconds passed between the start of the rectal examination (when a Defendant said, "spread your cheeks!") and when three Defendants helped Plaintiff back up. Plaintiff was out of view for the entire ten seconds.

Although the video undermines Plaintiff's story – members of the tactical team would have needed to both search his rectal cavity and sexually assault him

---

[2] It also seems that Plaintiff may be trying to base an Eighth Amendment claim on his walk down the gallery, from cell 152 to cell 107. He claims that his buttocks were exposed for the entirety of this walk, which lasted approximately two minutes. Claims that a prisoner was forced to be naked in front of other prisoners are evaluated using the same standard as claims of humiliating strip searches. *See Rivera v. Jimenez*, No. 12-CV-476-BBC, 2013 WL 6440978, at *5-6 (W.D. Wis. Dec. 9, 2013), *aff'd* 556 F. App'x 505 (7th Cir. 2014). Therefore, courts should look to whether a prisoner was forced to walk naked in front of other prisoners as part of "calculated harassment unrelated to prison needs, with the intent to humiliate and inflict psychological pain." *Id.* at *6. The video shows that Plaintiff's walk between cell 152 and cell 108 was not meant to be humiliating. The walk was short – at just two minutes—and no members of the tactical team attempted to draw any attention to Plaintiff or his exposed buttocks. Indeed, the video shows that the tactical team covered Plaintiff in a garment before moving him between cells. *Id.*

13

within ten seconds instead of ten minutes, and the video does not contain any evidence that Plaintiff struggled during the time he was off camera – it does not "utterly discredit" Plaintiff's claim that he was sexually assaulted. *See Scott*, 550 U.S. at 380-81; *Sobuh*, 2014 WL 3660457, at *7.

Defendants argue summary judgment is appropriate because certain inferences that can be made from the video suggest that no sexual assault occurred. However, the two cases they cite are inapposite. Defendants first cite *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004). In that case, the Seventh Circuit held that a magistrate judge did not commit *clear error* when he drew inferences from a "fairly comprehensive" but incomplete video to find pursuant to Federal Rule of Civil Procedure 52(c) that a prisoner was not subject to excessive force. *Id*. at 504-05. It would be inappropriate to apply *Fillmore* here because of the different procedural posture of this case. "Unlike summary judgment which requires that judgment be rendered as a matter of law, a trial court ruling on a motion for judgment on partial findings under Rule 52(c) is acting in the capacity of a finder of fact, weighing evidence and assessing the credibility of witnesses." *See Pinkston v. Madry*, 440 F.3d 879, 890 (7th Cir. 2006). "Accordingly, appellate review of a judgment rendered under Rule 52(c) is for clear error only, and we afford the plaintiff no special deference and need not draw any inferences in his favor." *Id.* At this stage, the Court must draw inferences in Plaintiff's favor, so it cannot act as the court did in *Fillmore*.

Next, Defendants cite *Boyd v. Pollard*, 621 F. App'x 352 (7th Cir. 2015). In *Boyd*, the Seventh Circuit held that a district court appropriately granted summary

judgment on a prisoner's excessive force claim based upon a video, even though parts of it were unclear. It concluded that even though "we cannot tell why or how [the prisoner] ended up on the ground and what occurred when [the prisoner] and his guards entered the new cell," the prisoner's "minor injury" and the guard's "professional behavior" would preclude a reasonable jury from finding that the prisoner was body slammed and repeatedly struck on his head and his face. *Id.* at 355-56. The inference that the court drew in *Boyd*, which considered a claim that the guards maliciously inflicted pain or injury, does not apply here. Plaintiff's claim of sexual assault is governed by a different legal standard: whether anyone on the tactical team performed some action that was "intended to humiliate the victim or gratify the assailant's sexual desires." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). The tactical team could have assaulted Plaintiff in a humiliating way that left no obvious signs of injury, so it is inappropriate to apply the logic of the *Boyd* court to these circumstances.

In short, the video of Plaintiff's cavity search, like the video of Plaintiff's cell extraction, is too inconclusive to grant summary judgment. Granting summary judgment would require inappropriate resolution of inferences in Defendants' favor rather than Plaintiff's favor. It is frustrating that the two most pertinent portions of the video are unclear. Had the tactical team taken a better video recording, it is possible, and perhaps even likely, that the Court would be able to grant summary judgment in Defendants' favor. On this record, though, Plaintiff's claims must be resolved at trial.

## CONCLUSION

IT IS THEREFORE ORDERED:

1. Defendants' Motion for Summary Judgment (Doc. 21) is DENIED.

2. Defendants' Motion to Substitute Greg Tangman for Named Defendant Troy Smith is TAKEN UNDER ADVISEMENT.

3. This matter is set for a telephonic status conference on April 6, 2016 at 1:15 p.m. The Clerk is directed to issue a telephone writ for Plaintiff's appearance by phone.

Entered this 22nd day of March, 2016.

                                             s/Joe B. McDade
                                             JOE BILLY McDADE
                              United States Senior District Judge